The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner George T. Glenn and the briefs and arguments on appeal. With reference to their assignments of error, the appealing party has shown good ground to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses in part and affirms in part the Deputy Commissioner's holding and enters the following Opinion and Award.
***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as an executed Pre-Trial Agreement, as:
 STIPULATIONS
1. All the parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between the defendant-employer and the plaintiff-employee at all relevant times herein.
3. On 1 May 1993, National Surety Corporation provided workers' compensation coverage for defendant-employer. On 20 April 1994, Security Insurance Company of Hartford provided workers' compensation insurance for defendant-employer.
4. Plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer on 1 May 1993, while Fireman's Fund/National Surety Corporation was the carrier on the risk for workers' compensation insurance. The parties entered into an Industrial Commission Form 21 Agreement for Compensation. Plaintiff was paid temporary total disability benefits from 1 May 1993 through 26 August 1993, as a result of said injury by accident.
5. Plaintiff's average weekly wage was $526.40 on 20 April 1994.
6. That the issues to be determined by the Commission are as follows:
 a) Whether plaintiff sustained an injury by accident or an aggravation of a pre-existing condition on 20 April 1994, while in the course and scope of her employment with defendant-employer?
 b) If so, which carrier is responsible for the payment of the same?
***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was a fifty-eight year old woman at the time of the hearing before the Deputy Commissioner on 23 April 1998. Plaintiff attended Catawba Valley Community College, where she was enrolled in a nursing program for one year, and took additional classes in other subjects from 1973 to 1975. Plaintiff's training and experience involved working in nursing homes and hospitals and a home health agency. Plaintiff is an LPN and operated her own nursing service company for a period of time.
2. In December 1992, defendant-employer opened a facility in Moore County. Plaintiff began working for defendant-employer on a part-time basis, working 32 hours per week. As defendant-employer's facility grew, plaintiff often worked from50-60 hours per week. Plaintiff's job required her to help patients with their laundry, medications, feeding, bathing, changing dressings and changing bed linens.
3. On 4 January 1993, plaintiff was lifting a patient off the floor and felt a tearing sensation in her lower back. Following this incident, plaintiff was treated with flexural and anaprox for her pain. Plaintiff did not file a workers' compensation claim for this injury.
4. On 1 May 1993, plaintiff was lifting a patient off the floor into a bed and felt the immediate onset of a burning pain in her lower back and pain in her bladder. Following this incident, plaintiff was examined by Dr. Malcolm Shupeck, who diagnosed her with degenerative disc disease and with a herniated disc at the L4-5 level. Dr. Shupeck removed plaintiff from work and discussed possible treatment, including surgery.
5. Thereafter, plaintiff, defendant-employer and its workers' compensation carrier, Fireman's Fund, entered into a Form 21 Agreement for Compensation for Disability for the 1 May 1993 incident. This Form 21 Agreement was approved by the Commission on 21 October 1993. Pursuant to this Form 21 Agreement, defendants accepted liability for plaintiff's 1 May 1993 injury and agreed to pay temporary total disability compensation at the rate of $288.27 per week beginning on 2 May 1993.
6. Plaintiff next saw Dr. Shupeck on 27 May 1993, at which time she reported worse right leg pain and some low back pain. On 17 June 1993, plaintiff was again examined by Dr. Shupeck, and reported having left hip pain and continued right leg pain. Following this visit, Dr. Shupeck scheduled plaintiff for epidural steroid injections and discussed with her the need for surgery to repair the disc in her back. On 24 June 1993, plaintiff called and canceled the epidural steroid injections which had been scheduled.
7. On 2 August 1993, Dr. Shupeck released plaintiff to light duty work with restrictions of no heavy lifting, no repetitive bending and frequent changes of position. The light duty was to last for two weeks with a gradual increase to full duty. Pursuant to these restrictions, plaintiff returned to work for defendant-employer on 6 August 1993.
8. After returning to work on 6 August 1993, plaintiff continued to experience pain, but was able to perform her work and to return to full time duty.
9. On 29 November 1993, plaintiff returned to Dr. Lamb and was examined by his physician's assistant, Ms. Nancy Kaiser. Plaintiff reported that she continued to have pain in her hip and back with radiation down her leg. It was also noted that there was an indentation in plaintiff's lateral hip, which was a questionable separation of a muscle. Plaintiff was advised to resume taking amitriptyline and was referred back to Dr. Shupeck.
10. Plaintiff was again examined by Dr. Shupeck on 9 December 1993 with continuing complaints of low back and right hip pain. Plaintiff still refused the option of surgery that was presented by Dr. Shupeck.
11. On 23 March 1994, Dr. Shupeck wrote Polly Schwartz, claims representative with Fireman's Fund, and advised that plaintiff had lumbar disc disease with persistence in symptoms that was likely to continue. Dr. Shupeck was of the opinion that plaintiff reached maximum medical improvement as of 9 December 1993 with a four percent (4%) permanent partial disability rating to her back. In giving this rating, Dr. Shupeck noted and considered the fact that plaintiff had declined surgical treatment and epidural steroid injections.
12. On 20 April 1994, EMS personnel came to defendant-employer's facility to transport a patient who had fallen out of bed and broken her leg. Plaintiff was in the patient's room while EMS personnel were placing the patient on the stretcher. As the patient was being transferred from her bed onto the stretcher, it appeared that the patient was going to fall off the stretcher. Plaintiff crawled over the patient's bed and grabbed the side of the stretcher to keep the patient from falling. This caused plaintiff to experience an increase in pain in her lower back. Plaintiff continued to work her shift following this incident. She returned to work the next day starting at 3:00 p.m., but was unable to finish her shift that night and the director of nursing sent her home. Plaintiff reported to the emergency room at Moore Regional Hospital on 23 April 1994. Plaintiff was examined by Dr. John Freeman, who diagnosed plaintiff as having sustained an exacerbation of her pain and pre-existing lumbar disc herniation. Dr. Freeman prescribed Relafen, strict bed rest for a week and referred plaintiff back to Dr. Shupeck.
13. Defendant-employer and Security Insurance Company of Hartford/EBI Companies, the carrier on risk at that time, stipulated that the incident on 20 April 1994 constituted a specific traumatic incident.
14. Plaintiff returned to Dr. Shupeck on 3 May 1994 reporting hip pain radiating into her right leg and knee. Dr. Shupeck again presented epidural steroid injections or surgery as treatment options, which plaintiff declined.
15. Dr. Shupeck initially released plaintiff to return to work as of 23 May 1994. However, when he again examined her on 24 May 1994, plaintiff was continuing to experience right lower back and hip pain which was radiating into her right leg and foot. Consequently, plaintiff remained unable to return to work.
16. By 15 August 1994, plaintiff's condition as the result of the 20 April 1994 incident had improved such that Dr. Shupeck was able to release her to return to work. Her primary complaint at that time was pain in the right hip and thigh. Her return to work date was supposed to have been 2 September 1994. However, when plaintiff made inquiries about returning to work for defendant on 2 September 1994, she was informed there was no work available.
17. By 2 September 1994, plaintiff's pain symptoms had essentially returned to the pre 20 April 1994 level. Plaintiff's incapacity to earn wages 2 September 1994 was caused by her 1 May 1993 injury.
18. On 17 October 1994, Dr. Shupeck reassessed plaintiff's condition and opined that her disability rating had risen to seven percent (7%). Dr. Shupeck attributed the additional three percent (3%) to the duration and persistence of plaintiff's pain symptoms, not to causation arising form the 20 April 1994 incident. Plaintiff's underlying condition remained the same as it had been at the time of her 23 March 1994 rating.
19. On 1 May 1993, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer in the form of a specific traumatic incident of the work assigned. Defendant-employer and National Surety Company/Fireman's Fund admitted liability for this injury through an Industrial Commission Form 21 Agreement.
20. As the result of her 1 May 1993 injury by accident, plaintiff was unable to earn wages in her former employment with defendant-employer or in any other employment from 2 May 1994 through 6 August 1993 and from 2 September 1994 through the present and continuing. National Surety Corporation/Fireman's Fund is the carrier on the risk covering this period.
21. On 20 April 1994, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer as a direct result of a specific traumatic incident of the work assigned. As a result of this injury which aggravated plaintiff's pre-existing condition, plaintiff's back and leg pain symptoms increased to such an extent that she was unable to work from 22 April 1994 through 2 September 1994.
22. As the result of her 1 May 1993 injury by accident, plaintiff has sustained a seven percent (7%) permanent partial disability rating to her back.
23. As the result of her 1 May 1993 injury by accident, plaintiff has been unable to earn wages in her former employment with defendant-employer or in any other employment from 2 September 1994 through the present and continuing.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's average weekly wage on 1 May 1993 was $432.40 per week, yielding a compensation rate of $288.27. G.S. §97-2(5).
2. Plaintiff's average weekly wage on 20 April 1994 was $526.40 per week, yielding a compensation rate of $350.95. G.S. §97-2(5).
3. On 1 May 1993, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer in the form of a specific traumatic incident of the work assigned. G.S. § 97-2(6).
4. As the result of her 1 May 1993 injury by accident, plaintiff was incapable of earning the same or greater wages from 2 May 1993 through 6 August 1993 and from 2 September 1994 through the date of the hearing before the Deputy Commissioner and continuing. G.S. § 97-2(9). Plaintiff is entitled to be paid by defendant-carrier National Surety Corporation/Fireman's Fund temporary total disability compensation at the rate of $288.27 per week for the period from 2 May 1993 through 6 August 1993 when she returned to work and from 2 September 1994 through the date of the hearing and continuing until further order of the Commission. G.S. § 97-29.
5. Defendant had not rebutted plaintiff's presumption of continuing disability created by the Form 21 Agreement by showing that there are jobs plaintiff can perform and obtain after 2 September 1994. Kisiah v. W.R. Kisiah Plumbing, 124 N.C. App. 72,476 S.E.2d 434 (1996), disc. rev. denied, 345 N.C. 343,483 S.E.2d 169 (1997).
6. On 20 April 1994, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer as a direct result of a specific traumatic incident of the work assigned. G.S. § 97-2(6).
7. As the result of her 20 April 1994 injury by accident, plaintiff's pain symptoms increased temporarily and caused her to become unable to work form 22 April 1994 through 1 September 1994. G.S. § 97-2(9). Plaintiff is entitled to have defendant-carrier Security Insurance Company of Hartford pay temporary total disability compensation at the rate of $350.95 per week from 22 April 1994 to 1 September 1994. G.S. §97-29.
8. As the result of her 1 May 1993 injury by accident plaintiff is entitled to have defendant-carrier National Surety Corporation/Fireman's Fund pay for medical expenses incurred or to be incurred for the periods of 1 May 1993 to 20 April 1994 and from 2 September 1994 and continuing until further order of the Commission. G.S. § 97-25.
9. As the result of her 20 April 1994 injury by accident, plaintiff is entitled to have Security Insurance Company of Hartford pay for all medical expenses arising from the 20 April 1994 injury during the period from 20 April 1994 to 2 September 1994. G.S. § 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses in part and affirms in part the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant-carrier National Surety Corporation/Fireman's Fund shall pay to plaintiff temporary total disability benefits at the rate of $288.27 per week for the period of 1 May 1993 through 6 August 1993 and from 2 September 1994 and continuing until further order of the Commission. Defendant-carrier National Surety Corporation/Fireman's Fund is entitled to a credit for all benefits previously paid to plaintiff pursuant to the approved Form 21 Agreement. All unpaid compensation which as accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved herein.
2. Defendant-carrier, Security Insurance Company of Hartford, shall pay to plaintiff temporary total disability compensation at the rate of $350.95 per week and medical expenses for the period from 22 April 1994 to 2 September 1994. Having accrued, this compensation shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved herein.
3. Defendant-carrier National Surety Corporation/Fireman's Fund shall pay for medical expenses incurred or to be incurred by plaintiff as the result of her 1 May 1993 injury for the periods of 1 May 1993 to 20 April 1994 and from 2 September 1994 and continuing until further order of the Commission.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded to plaintiff above is approved for counsel for plaintiff. From the amounts having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff; thereafter, counsel for plaintiff shall receive every fourth check.
5. Defendants shall pay the costs of this action.
S/______________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/________ J. HOWARD BUNN, JR. CHAIRMAN
S/________ RENEE C. RIGGSBEE COMMISSIONER